UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric James Bagnall, individually, and as Administrator of the Estate of Camren McKay Bagnall,<br><br>Plaintiff,<br><br>v.<br><br>California State University Maritime, et al.,<br><br>Defendant. | No. 2:23-cv-01606-KJM-CKD<br><br>ORDER |

Plaintiff Eric James Bagnall filed suit against defendants Board of Trustees of the California State University (CSU), Vineeta Dhillon, John Does 1–10 and ABC Entities 1–10,[1] following the suicide of his son, Camren McKay Bagnall, while Camren was the subject of a Title IX investigation at CSU Maritime. Defendants CSU and Vineeta Dhillon move to dismiss. The court **grants the motion in part**.

---

[1] If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

**I.    BACKGROUND**

Plaintiff's son, Camren, was a student at CSU Maritime. Compl. ¶ 14, ECF No. 38. Around September 2020, another student, Lilian Gregg, filed a Title IX complaint[2] against Camren. *Id.* ¶¶ 17, 26. She "alleg[ed] claims of sexual misconduct and sexual assault." *Id.* ¶ 4. Camren denied Gregg's allegations, and plaintiff alleges now these allegations were false and forced as a result of Gregg sharing the allegations with a mandatory reporter. *See id.* ¶¶ 28, 47–49, 61.

As a result of the complaint, Vineeta Dhillon, CSU Maritime's Title IX Coordinator, conducted an investigation. *Id.* ¶¶ 29, 32, 61, 69. Plaintiff alleges Camren suffered harassment and bullying from peers once news about the complaint had spread. *Id.* ¶¶ 53–60. Plaintiff alleges Dhillon was biased against decedent during the investigation because of his sex. *Id.* ¶¶ 61–69. Plaintiff alleges Dhillon "prejudged the Decedent on the basis of his sex, presumed his guilt from the onset of her investigation, and examined the exculpatory evidence presented to her through a tainted lens designed only to reinforce her preconceived notion that he had, in fact, done as Ms. Gregg alleged." *Id.* ¶ 64. On February 8, 2021, a few days after his attorneys submitted his response to a report on the Title IX investigation, Camren committed suicide. *Id.* ¶¶ 1, 16, 52.

Plaintiff's state-law claims are (1) negligence, (2) negligent hiring, training, supervision or retention, (3) negligence via vicarious liability and tort liability asserted against principal, (4) wrongful death, (5) survival action, (6) negligence per se and (7) "tortious conduct of defendants John Does 1–10 & ABC Entities 1–10." *See id.* ¶¶ 70–126, 136–40. Plaintiff's only federal law claim is a Title IX claim. *Id.* ¶¶ 127–35. All of plaintiff's claims arise from the same event: Camren's suicide.

---

[2] Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Individuals at an educational institution receiving financial assistance may file an administrative "Title IX complaint" with the institution alleging a violation of the law. *See* 34 C.F.R. § 106.44.

1    Plaintiff originally brought this case in the U.S. District Court for the District of
2    Connecticut.  *See* Original Compl., ECF No. 1.  The court granted defendants' motion to transfer
3    venue to the Eastern District of California.  *See* Prior Order, ECF No. 28.  Defendant moves to
4    dismiss.  Mot., ECF No. 39.  The motion is fully briefed.  Opp'n, ECF No. 43; Reply, ECF
5    No. 44.  The court submitted the matter without a hearing.

6    Local Rule 230(c) requires plaintiff to file an opposition within 14 days of the filing of
7    defendants' motion.  Defendants filed their motion on November 3, 2023 and plaintiffs filed their
8    first opposition, ECF No. 41, on November 20, 2023—before filing notice of errata, Notice, ECF
9    No. 42, and an updated opposition, Opp'n, on November 22, 2023.  Defendants request the court
10   regard the untimely opposition as "non-opposition to the Motion" or as means to deny plaintiff
11   the opportunity to argue in opposition at hearing.  *See* Reply at 1–2, ECF No. 44.  The court
12   denies defendants' request but reminds plaintiff compliance with Local Rules and the Standing
13   Order are mandatory and any future untimely filings may be disregarded.

14   **II.    LEGAL STANDARD**

15   A party may move to dismiss for "failure to state a claim upon which relief can be
16   granted."  Fed. R. Civ. P. 12(b)(6).  In response, the court begins by assuming the complaint's
17   factual allegations are true, but not its legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79
18   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The court then determines
19   whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8.  *Id.*
20   at 679.  This evaluation of plausibility is a context-specific task drawing on "judicial experience
21   and common sense."  *Id.*

22   **III.   ANALYSIS**

23   **A.      Title IX Claim**

24   Defendants argue plaintiff's Title IX claim "is simply a negligence per se claim purporting
25   to assert Title IX as the standard of care."  Mot. at 6.  Plaintiff labeled his seventh cause of action
26   "Title IX Violations" and alleged Camren faced sex-based discrimination in violation of Title IX.
27   *See* Compl. ¶¶ 127–35.  Accordingly, the court construes the seventh cause of action as a federal
28   Title IX claim, separate from plaintiff's negligence claim under state law.  *See id.* ¶¶ 116–26.

3

Plaintiff asserts his Title IX claim against both Dhillon and CSU. But "Title IX does not create a private right of action against school officials, teachers, and other individuals who are not direct recipients of federal funding." *Al-Rifai v. Willows Unified Sch. Dist.*, 469 F. App'x 647, 649 (9th Cir. 2012) (citation omitted). The court dismisses the Title IX claim against Dhillon with prejudice and without leave to amend.

As for the claim against CSU, "[t]o state a Title IX claim, a plaintiff must plead that: (1) the defendant educational institution[] receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity, and (3) the latter occurred on the basis of sex." *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020). The pleading standard for a Title IX claim based on "allegations of sex discrimination during disciplinary proceedings for sexual misconduct charges" is "whether the alleged facts, if true, raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex[.]" *Id.* at 946–47 (alteration in original) (internal citation and quotation marks omitted). "[A] plaintiff need only provide *enough facts* to state a claim for relief that is plausible on its face," *Doe v. Regents of Univ. of California*, 23 F.4th 930, 936 (9th Cir. 2022) (emphasis in original) (internal citation and quotation marks omitted), and "[s]ex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed," *id.* (alteration in original) (internal citation and quotation marks omitted).

The Ninth Circuit's decision in *Schwake* is instructive. The court considered two categories of allegations: (1) "the allegations of background indicia of sex discrimination," namely, the pressure that the University faced concerning its handling of sexual misconduct complaints and gender-based decisionmaking against men in sexual misconduct disciplinary cases" and (2) "the allegations concerning the specific disciplinary case against [the plaintiff]." *Schwake*, 967 F.3d at 948. With respect to the first category, the "background indicia," the court relied on the following allegations: (1) a Department of Education investigation of the university regarding Title IX violations "placed tangible pressure on the University"; (2) male respondents in sexual harassment and misconduct disciplinary proceedings at the university were "invariably

4

found guilty, regardless of the evidence or lack thereof"; and (3) the plaintiff knew of other recent disciplinary proceedings where male respondents "were all found guilty regardless of the evidence or lack thereof." *Id.* at 948–49.  With respect to the second category, "the disciplinary case against plaintiff," the court relied on the following allegations: (1) statements by a university professor that suggested "an atmosphere of bias against [the plaintiff] during the course of the University's disciplinary case;" (2) the associate dean's preventing plaintiff from appealing the punishment in his case; (3) the associate dean's preventing plaintiff from filing a complaint against the female complainant; and (4) evidence of a one-sided investigation, such as failure "to follow up with witnesses and evidence he offered in his defense" and suspending the plaintiff before giving him a chance to respond to additional allegations of violations of the student code. *Id.* at 950–51; *see also, e.g.*, *Doe v. Regents of Univ. of California*, 23 F.4th 930 (9th Cir. 2022) (finding plaintiff sufficiently pled a Title IX claim where plaintiff alleged background indicia of bias and instances of bias in plaintiff's specific case).

Here, in the first category, plaintiff does not allege any background indicia of sex discrimination other than his allegations about Dhillon's "radical feminism" and "anti-male bias." Compl. ¶¶ 61–69.  As evidence of Dhillon's alleged bias against men and "radical feminism," plaintiff refers to screenshots of Dhillon's social media posts, which were attached to a previous version of his complaint, but not the operative complaint.  *See id.* ¶¶ 66–67.  An "amended complaint supersedes the original, [with] the latter being treated thereafter as non-existent." *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (internal citation omitted).  While the exclusion of these exhibits from the operative complaint could support leave to amend, the court does not consider the previously filed exhibits in evaluating the instant motion.  The complaint includes no other allegations like those the court discussed in *Schwake*, such as general pressures against the university to pursue Title IX investigations, trends of disciplinary proceedings being consistently decided against male respondents or any other similar patterns or practice of sex discrimination.  *See generally* Compl.

In the second category, plaintiff does not identify procedural irregularities in Camren's case, such as denials of requests to appeal, to interview witnesses or to file a complaint against the

5

complainant. *See generally id.* Plaintiff does suggest Dhillon disregarded "the wealth of exculpatory evidence provided to [her]" and disregarded "contradictions in Ms. Gregg's statements." *Id.* ¶ 121. He does not, however, allege Dhillon was aware of the specific evidence he identifies or disregarded it. The Title IX investigation was incomplete at the time of decedent's death and no final assessment had been made. *See* Mot. at 1–2.

These allegations fall short of what is necessary to state a claim. *See Schwake*, 967 F.3d 940; *Doe v. Oregon State Univ.*, 614 F. Supp. 3d 847 (D. Or. 2022) (finding the "[p]laintiff's allegations that [the university] mishandled witnesses and improperly weighed credibility, absent a background indicia of sex discrimination, amount to little more than second-guessing of [the university's] decision" and ultimately finding plaintiff did not state a claim); *Massey v. Biola Univ., Inc.*, No. 19-09626, 2020 WL 5898804 (C.D. Cal. Aug. 21, 2020), *report and recommendation adopted*, No. 19-09626, 2020 WL 6161451 (C.D. Cal. Oct. 20, 2020), *aff'd*, No. 20-56128, 2022 WL 671021 (9th Cir. Mar. 7, 2022). For these reasons, the court dismisses plaintiff's Title IX claim against CSU Maritime but with leave to amend.

The court also notes plaintiff only cites 28 U.S.C. §§ 1331 and 1343—federal question jurisdiction and supplemental jurisdiction, respectively—as the basis for federal jurisdiction. Plaintiff may amend his complaint, but if the court later dismisses his federal claim with prejudice, this court would no longer have jurisdiction over this case based on these grounds.

      **B.**     **State-Law Claims**

Defendants assert plaintiff did not comply with the California Government Claims Act (GCA), precluding his state-law claims. Mot. at 3–7. "As a prerequisite for filing suit for 'money or damages' against a public entity, the California Government Claim Act requires presentation of a claim to the public entity." *Gen. Sec. Servs. Corp. v. Cnty. of Fresno*, 815 F. Supp. 2d 1123, 1131 (E.D. Cal. 2011); *see* Cal. Gov't Code §§ 911.2, 945.4; *see also State of California v. Superior Court ("Bodde")*, 32 Cal. 4th 1234, 1240–44 (2004). This requirement applies to claims sounding in tort. *See City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). Claims involving death or injuries to a person or personal property must be presented no later than six months after the date of accrual. *See* Cal. Gov't Code § 911.2(a). The date of accrual is

that which would apply under the statute of limitations if the dispute were between private litigants. *See Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09 (2007). The Government Claims statutes "must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim." *City of Stockton*, 42 Cal. 4th at 738. If a complaint does not allege compliance with the GCA, the omission is grounds for dismissal of state-law tort claims at the motion to dismiss stage. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (affirming lower court decision to dismiss state-law tort claims when the complaint did not allege compliance with the GCA).

The GCA applies to suits for money or damages against defendant CSU, *see* Cal. Gov't Code § 811.2 (defining "public entity" as including "the Trustees of the California State University and the California State University"), as well as against Dhillon, *see Fowler v. Howell*, 42 Cal. App. 4th 1746, 1750 (1996) ("[A] cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred unless a timely claim has been filed against the employing public entity." (internal quotation marks omitted) (citing Cal. Gov't Code §§ 950.2, 911.2)); *see also* Opp'n at 9 (conceding Dhillon's actions "were conducted entirely within the scope of Dhillon's employment").

Here, the complaint neither mentions a timely claim filing nor alleges an excuse from compliance with the filing requirement, if there is one. Instead, in his opposition, plaintiff makes the erroneous argument that, "[t]he ongoing and targeted campaign of harassment leveled at Decedent, of which Defendant Dhillon was aware, served at the time as sufficient notice of defects within Defendants Dhillon and CSU's course of conduct with respect to Title IX investigations." Opp'n at 8. A "public entity's actual knowledge of the circumstances surrounding the claim" does not excuse a lack of compliance with Government Claims statutes. *See City of Stockton*, 42 Cal. 4th at 738.

Because plaintiff has not alleged compliance with the GCA, the court dismisses plaintiff's state-law claims. *See A.H. v. Sacramento Cnty. Dep't Child, Fam. & Adult Servs.*, No. 21-00690, 2021 WL 4263317 (E.D. Cal. Sept. 20, 2021) (dismissing plaintiff's state law claim because plaintiff did not allege compliance with the GCA). Plaintiff's claims involve death to a person

7

and so he had six months from the date his claims accrued to comply with the GCA. *See* Cal. Gov't Code § 911.2(a). Plaintiff does not allege when his claims accrued, and it is unclear whether amendment would be futile. *See generally* Compl. The court grants the motion to dismiss as to the state-law claims with leave to amend, with the understanding plaintiff may be able to allege compliance with the GCA and identify when his claim accrued.

The court declines to reach the other arguments in defendants' motion to dismiss.

### IV. CONCLUSION

The motion to dismiss is **granted in part with leave to amend**:

- Claims 1–6 and 8 are dismissed with leave to amend.
- Claim 7 is dismissed with prejudice and without leave to amend as to defendant Dhillon.
- Claim 7 is dismissed with leave to amend as to CSU.

This order resolves ECF No. 39. Plaintiff must file any amended complaint within twenty-one (21) days. The court vacates the status conference set for March 14, 2024 and resets it for April 25, 2024 at 2:30 p.m.

IT IS SO ORDERED.

DATED: March 12, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE