Joseph Cannizzo Jr., Esquire
jcannizzo@lentolawgroup.com
AL State Bar No. 3584O57X
Admitted *Pro Hac Vice*
**LENTO LAW GROUP, P.C.**
Chase Corporate Center
1 Chase Corporate Center, Suite 400
Birmingham, AL, 35244
T: (385) 485-0600 | F: (313) 992-1122

Jason O. Sias (SBN #279196)
Jsias@siaslawinc.com
**SIAS LAW, INC.**
1809 S Street, Suite 101-291
Sacramento, CA 95811
Telephone: (888) 958-5071
Facsimile: (888) 958-5072

Attorneys for Plaintiffs
ERIC JAMES BAGNALL and ESTATE OF CAMREN MCKAY BAGNALL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| ERIC JAMES BAGNALL, individually, and as Administrator of the ESTATE OF CAMREN MCKAY BAGNALL,<br><br>Plaintiffs,<br>vs.<br><br>CALIFORNIA STATE UNIVERSITY MARITIME, VINEETA DHILLON, LILLIAN GREGG, JOHN DOES 1-10 (fictitious names), and ABC ENTITIES 1-10 (fictitious entities),<br><br>Defendants. | Case No. 2:23-cv-01606-KJM-CKD<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY AND VINEETA DHILLON**<br><br><u>Motion Hearing:</u><br>Date: July 12, 2024<br>Time: 10:00AM<br>Place: 501 I Street, Sacramento<br>Courtroom: 3, 15th Floor<br>Judge: Hon. Kimberly J. Mueller |

**COMES NOW THE PLAINTIFF**, ERIC JAMES BAGNALL, individually and as Administrator of the ESTATE OF CAMREN MCKAY BAGNALL, who hereby opposes the Motion to Dismiss Plaintiff's Third Amended Complaint, filed by Defendants THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY and VINEETA DHILLON, and in

support hereof, relied upon the accompanying Brief/Memorandum of Law filed concurrently herewith.

Dated: April 30, 2024

                                               Respectfully Submitted,

                                               **LENTO LAW GROUP, P.C.**
                                               **SIAS LAW, INC.**

By: _____
      Joseph Cannizzo Jr., Esquire
      Jason O. Sias
      Attorneys for Plaintiffs,
      ERIC JAMES BAGNALL and
      ESTATE OF CAMREN MCKAY BAGNALL

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           Page(s)

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................... 4, 7

*Austin v. Univ. of Or.,*
    925 F.3d 1133, 1137 n.4 (9th Cir. 2019) ......................................................... 5

*Doe v. Regents of the Univ. of Cal.,*
    23 F.4th 930 (9th Cir. 2022) ............................................................................ Passim

*Minsky v. Los Angeles,*
    11 Cal. 3d 113; 113 Cal. Rptr. 102; 520 P.2d 726 (1974) ............................. 12

*Samuelson v. Or. State Univ.,*
    725 Fed.Appx. 598, 599 (9th Cir. 2018) ......................................................... 10

*Schwake v. Arizona Board of Regents,*
    967 F.3d 940 (9th Cir. 2020) .......................................................................... Passim

*Stanley v. Trs. of Cal. State Univ.,*
    433 F.3d 1129, 1136 (9th Cir. 2006) .............................................................. 10

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.,*
    34 Cal. 4th 441; 20 Cal. Rptr. 3d 176; 99 P.3d 500 (2004) ........................... 11

**Statutes, Rules & Other Authorities**

Cal. Civ. Proc. Code § 335.1 ................................................................................... 10
Fed. R. Civ. P. 12 .................................................................................................... 4

# INTRODUCTION

This matter arises as the consequence of false accusations of sexual misconduct and the subsequent misapplication of Title IX, Education Amendments Act of 1972, 20 U.S.C. §§1681 - 1688 (2018), leading to the untimely death, by suicide, of a Camren McKay Bagnall (hereinafter, "Camren" or the "Decedent"). Plaintiff in this matter is the Decedent's father, who brings this action in connection with the untimely passing of his son. In short, the events that ultimately lead to Camren's tragic death commenced with the filing of a false Title IX complaint against the Decedent, alleging claims of sexual misconduct and sexual assault, thereafter, followed by a wrongful and woefully deficient Title IX investigation by Defendant THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY ("CSU BoT"), and finally, the unjust presumption of Decedent's guilt by Title IX Coordinator, Defendant VINEETA DHILLON, throughout the course of the investigation.

Plaintiff's Third Amended Complaint ("TAC") asserts the following causes of action: (i) negligence against Defendant Vineeta Dhillon; (ii) negligent hiring, training, supervision, or retention, against CSU BoT; (iii) negligence via vicarious liability against CSU BoT; (iv) wrongful death against Defendant Vineeta Dhillon and CSU BoT; (v) survival action pursuant to California Code of Civil Procedure § 377.30 against Defendant Vineeta Dhillon and CSU BoT; (vi) negligence per se violations of California Education Code § 66270; and (vii) Title IX violations as against Defendant CSU BoT.

# STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only contain sufficient facts to suggest a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the Rule 12(b)(6) standard (under which Rule Defendants bring their instant Motion to Dismiss) merely requires allegations that, taken as true and construed in the light most favorable to the Plaintiff, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Plausibility is a "context-specific" inquiry based on "judicial experience and common sense." *Id.*

In *Schwake v. Arizona Board of Regents*, 967 F.3d 940 (9th Cir. 2020), which the Defendants relied upon heavily in their instant Motion to Dismiss, the 9th Circuit made clear that,

"a party stating a Title IX claim need not meet the doctrinal tests (i.e. the erroneous outcome theory or the selective enforcement theory) superimposed on the state by some circuits because "'at bottom, they all ask the same question'... whether 'the alleged facts, if true, raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex.'" *Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930 (9th Cir. 2022) (citing *Schwake*, 967 F.3d at 947) (internal citations omitted). Importantly, "There is no heightened pleading standard for Title IX claims." *Schwake*, 967 F.3d at 949; *see also*, *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 n.4 (9th Cir. 2019).

In Plaintiff's TAC, Plaintiff has alleged facts which, if considered in the light most favorable to Plaintiff, plausible give rise to an entitlement to relief, and to the extent that the Court disagrees, Plaintiff must be afforded the benefit of discovery to flesh out Plaintiff's claims.

## ARGUMENT

### I.  PLAINTIFF STATES A TITLE IX CLAIM WHICH GIVES RISE TO A PLAUSIBLE INFERENCE THAT DEFENDANT CSU BOT DISCRIMINATED AGAINST PLAINTIFF ON THE BASIS OF HIS SEX, BUT TO THE EXTENT THE COURT DISAGREES, PLAINTIFF MUST BE AFFORDED THE BENEFIT OF DISCOVERY

"To state a Title IX claim, a plaintiff must plead that: (1) the defendant educational institution[] receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity, and (3) the latter occurred on the basis of sex." *Schwake*, 967 F.3d at 967.

As stated, the pleading standard for a Title IX claim based on "allegations of sex discrimination during disciplinary proceedings for sexual misconduct charges" is "whether the alleged facts, if true, raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex." *Schwake*, 967 F.3d at 946-47.

As this Court pointed out in its Order of March 12, 2024, the Court in *Schwake* "considered two categories of allegations": (1) the allegations of background indicia of sex discrimination, and (2) the allegations concerning the specific disciplinary case against [the plaintiff]. Both the *Schwake* decision and the Court's references thereto in its Order make clear

that the two categories are separate and distinct bases upon which a Plaintiff may bring a Title IX claim, and thus, allegations arising under both categories are not necessary to maintain a claim.

As Plaintiff openly states in his TAC, "It should also be noted that, while the foregoing speaks to the allegations concerning the specific disciplinary case against the Plaintiff, per Schwake v. Arizona Bd. of Regents, 967 F.3d 940, 946 (9th Cir. 2020), there nonetheless may exist "background indicia of sex discrimination" which Plaintiff is, as of yet unaware." (TAC ¶ 144). Thus, Plaintiff makes clear that the thrust of his Title IX argument is based upon the latter category of allegations, those allegations concerning the specific disciplinary case against the plaintiff.

That said, however, Plaintiff also makes clear that allegations of the former sort, background indicia of sex discrimination, may nonetheless exist, and that Plaintiff is simple, "as of yet unaware" of such facts. Plaintiff shall address both categories of allegations in turn.

First, with regards to those allegations concerning the specific disciplinary case against the plaintiff, the Court, in its March 12th Order, states, "plaintiff does not identify procedural irregularities in Camren's case, such as denials of requests to appeal, to interview witnesses or to file a complaint against the complainant."

As an initial matter, if this were the typical Title IX case where the Plaintiff was the Title IX respondent who was personally present during the Title IX investigation and could provide information concerning the specific procedural deficiencies which he or she faced during the Title IX investigation, Plaintiff's lack of such allegations in his TAC would be less forgivable, however, this is not the typical Title IX case. The Court should recall that the individual with the most intimate knowledge of the goings-on with respect to the Title IX investigation – apart from Defendant Vineeta Dhillon and perhaps the Title IX complainant – would be the Title IX respondent, the Decedent, who, unfortunately is deceased, and thus, cannot be questioned whereby such facts to support allegations of this type may be elicited. Further, in the absence of written discovery, which Plaintiff has yet to be afforded, having not reached such a procedural posture whereby such discovery tools as requests for production or interrogatories are available, Plaintiff is not in possession of CSU's Title IX investigatory file concerning the Decedent's Title

IX matter.

Thus, having no living Title IX respondent to elicit information from, and having no Title IX file on the Decedent from CSU with which to garner facts, Plaintiff respectfully asks the Court to afford Plaintiff a degree of latitude with respect to the allegations Plaintiff is able to set forth at this stage of the litigation, reminding again that, the Rule 12(b)(6) standard merely requires allegations that, *taken as true and construed in the light most favorable to the Plaintiff*, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Even so, Plaintiff has, in fact, sufficiently pled allegations concerning the specific disciplinary case against the plaintiff. In the Court's March 12th Order, the Court opined, "Plaintiff does suggest Dhillon disregarded 'the wealth of exculpatory evidence provided to [her]' and disregarded 'contradictions in Ms. Gregg's statements.'... <u>He does not, however, allege that Dhillon was aware of the specific evidence he identifies or disregarded it</u>." (Emphasis added).

Plaintiff specifically addressed this pleading deficiency in Plaintiff's TAC, adding that:

> 138. Although the Title IX investigation against Plaintiff was incomplete at the time of his death and no final determination as to a finding of responsibility had been made, the Title IX Complainant's own reluctance with which to follow through with the Title IX Complaint, given her knowledge of its falsity, coupled with her numerous factual inconsistencies and blatant lies, should have been enough for Defendant Dhillon to conclude the investigation and/or reach a finding of "No Responsibility" as to Plaintiff.
>
> 139. Nonetheless, Defendant Dhillon, perhaps out of a desire to make an example of Plaintiff, continued the Title IX investigation despite clear evidence in her possession of Plaintiff's innocence, thus directly endangering him on campus and subjecting him to immense ridicule and bullying.

(TAC ¶¶ 138 & 139).

Thus, despite Defendants' insistence to the contrary, Plaintiff specifically addressed the Court's concern regarding Defendant Dhillon's awareness of specific evidence which she disregarded. Again, in the absence of a living Title IX respondent, in the absence of CSU's Title IX file, and without the advent of discovery, how possibly could Plaintiff allege with anymore

specificity what specific evidence Defendant Dhillon was aware of but disregarded? Certainly, the additionally allegations which specifically addressed the Court's noted concern in its March 12th Order are sufficient to overcome the instant Motion to Dismiss, as they are allegations concerning specific procedural deficiencies in the Decedent's Title IX case which "raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex." *Schwake*, 967 F.3d at 946-47.

Further, regarding allegations of the former sort – background indicia of sex discrimination – Plaintiff specifically does not deny the existence of such facts, and in fact, alleges, "there nonetheless may exist 'background indicia of sex discrimination' which Plaintiff is, as of yet unaware." (TAC ¶ 144).

*Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930 (9th Cir. 2022) is particularly instructive here. Doe, the plaintiff in the aforementioned matter, pled various factually allegations which spoke to an internal pattern and practice of bias – one of the "background indicia of sex discrimination". Specifically, and among other things, Doe alleged that "the respondents in Title IX complaints that UCLA decided to pursue from July 2016 to June 2018 were overwhelmingly male (citing specific statistics for each of those years), and that the Regents doesn't report by gender the percentage of respondents found to have violated campus policy." *Doe*, 23 F.4th at 938.

In response to these allegations, the Court notes that:

> The Regents contends that these allegations are insufficient to show that it treated men and women differently in such contexts, arguing that unlike Schwake, Doe has no personal awareness of such facts and that the gender breakdown of complainants and respondents could be attributed to numerous possible factors that are not gender bias. ***But a lack of further detail does not render these allegations insufficient at the pleading stage, particularly because "[i]t may be difficult for a plaintiff to know the full extent of alleged discrimination in decision making before discovery allows a plaintiff to unearth information controlled by the defendant.*** " *Schwake*, 967 F.3d at 949. This is particularly true where, as here, any purported non-biased explanation for the enforcement statistics alleged by Doe ***would necessarily be maintained by the Regents***.

*Doe*, 23 F.4 at 938-39. (Emphasis added).

The Court in *Doe* acknowledges the difficulty a plaintiff in a Title IX case may have in alleging with any degree of specificity facts which suggest background indicia of sex discrimination, as such information is typically "controlled by" or "maintained by" the defendant. The very things the Court in *Schwake* relied on – (1) a Department of Education investigation of the university regarding Title IX violations; (2) whether male respondents in sexual harassment and misconduct disciplinary proceedings at the university were "invariably found guilty, regardless of the evidence or lack thereof"; and (3) other recent disciplinary proceedings where male respondents "were all found guilty regardless of the evidence or lack thereof" – all are allegations which Plaintiff simply lacks the necessary information to credibly allege.

Defendants cannot justly claim, as they do, that Plaintiff's "TAC fails to allege new facts demonstrating 'background indicia of sex discrimination,'" (Defendant's Memorandum and Points of Authorities in support of Motion to Dismiss, p.6) when the facts necessary to credibly make such allegations are within their sole possession and control. Such information could very readily be obtained through limited written discovery, should the Court so permit, however, as the Court in *Doe* recognized, in the absence of such discovery "it may be difficult for a plaintiff to know the full extent of alleged discrimination" as, again, Plaintiff is not privy to such facts at this time.

As such, given the foregoing, with respect to the latter category of allegations from *Schwake* – the allegations concerning the specific disciplinary case against the plaintiff – Plaintiff's TAC has sufficiently pled such allegations so as to "raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex," *Schwake*, 967 F.3d at 946-47, and with the advent of discovery, through which Plaintiff could receive a copy of CSU's Title IX investigatory file in connection with the Title IX investigation at the heart of this matter, Plaintiff reasonably calculates that additional such allegations will come to light. Similarly, with respect to the former category of allegations from *Schwake* – background indicia of sex discrimination – Plaintiff cannot reasonably be expected, at this early stage of the litigation, to credibly allege facts concerning matters which Plaintiff is simply not privy too, as such facts are controlled and

maintained by the Defendants themselves. In essence, Defendants ask Plaintiff to play a game of war, but Defendants hold all the cards.

In short, with respect to Plaintiff's Title IX claim against Defendant CSU BoT, it would be unjust to dismiss Plaintiff's claim when Plaintiff has not been afforded a reasonable opportunity through discovery to ascertain the facts necessary to fully flesh out the claim, and Plaintiff therefore, respectfully requests the opportunity to do so. Such an endeavor would not be a "fishing expedition to drum up claims" as Defendants allege (Defendant's Memorandum, p.5), as the claim already exists and has already been plead; rather, the discovery would be targeted to those very facts necessary to shed light on the background indicia of sex discrimination which Plaintiff is not presently privy to.

## II.  PLAINTIFF'S IX CLAIM IS NOT TIME-BARRED

Defendants are correct that the statute of limitations for Plaintiff's Title IX claim is two years in this matter, as the claim borrows its statute of limitations from the personal injury statute of limitations in the state in which the cause of action arises. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *see also* Cal. Civ. Proc. Code § 335.1. Defendants are incorrect, however, that Plaintiff's claim is time-barred.

"A Title IX claim accrues when a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Samuelson v. Or. State Univ.*, 725 Fed.Appx. 598, 599 (9th Cir. 2018) (citing, *Stanley*, supra. at 1136). Just as a Title IX claim borrows its statute of limitations from the state's personal injury statute of limitations, it makes sense then, that, as with a personal injury matter, a Title IX claim would accrue when "a plaintiff 'knows or has reason to know of the injury which is the basis of the action.'"

Very clearly, the injury which is the basis of the instant action is the tragic suicide of Plaintiff's Decedent which was directly and proximately caused, as alleged, by the Title IX violations complained of. As Plaintiff's Decedent's suicide occurred on February 8, 2021, Plaintiff's claim under Title IX did not accrue until that time, and thus, the statute of limitations began to run on that date. Plaintiff subsequently initiated this action with the filing of his original complaint on February 8, 2023, within the two-year statute of limitations. Thus, Plaintiff's Title

IX claim is not time-barred.

### III.   PLAINTIFF'S IX CLAIM IS NOT TIME-BARRED

In the interest of transparency, Plaintiff concedes that Plaintiff did not comply with the presentation of claims requirement of the California Government Claim Act (GCA). Since its inception, this case has always predominately been a Title IX matter, with Plaintiff's state-claims being ancillary thereto.

More to the point, however, following Plaintiff's Decedent's passing, this action itself was not originally contemplated by Plaintiff until well after the applicable period in which to comply with the presentation of claims requirement under the California GCA had passed.

In fact, following Plaintiff's Decedent's passing, a similarly tragic event befell Plaintiff in the Plaintiff's Decedent's remains were cremated without Plaintiff's knowledge or consent. Having just lost his son to a suicide precipitated by the conduct of the Defendants as alleged in the instant action, Plaintiff was then denied the opportunity to view his son's body one final time. In connection with those actions, Plaintiff, who was understandably beside himself, sought to pursue an action against the funeral home which cremated his son's remains. An action was subsequently commenced in Solano County Superior Court bearing Docket No. FC-S056401, and that matter became the sole focus of Plaintiff.

By the time Plaintiff's counsel's firm had been consulted and retained to pursue an action against the Defendants herein, in connection with the Title IX claim, the notice period under the California GCA had already elapsed.

Nonetheless, the state-law tort claims are not unmeritorious, and the inability to comply with the California GCA does not warrant the dismissal of these claims. Put simply, the California GCA exists to put government agencies and other such public entities and actors on notice with respect to potential claims against such an organization, thereby giving the agency or entity the opportunity to cure potential defects and avoid litigation where possible. To that effect, "the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446, 20 Cal. Rptr. 3d 176, 179, 99 P.3d 500,

502 (2004).

The ongoing and targeted campaign of harassment leveled at Decedent, of which Defendant Dhillon was aware, served at the time as sufficient notice of defects within Defendants Dhillon and CSU's course of conduct with respect to Title IX investigations. It was at this point that Defendants were made substantially aware of defects within this system, and would have had time to cure these defects prior to Decedent's death. Defendant Dhillon, in her role as Title IX investigator, was made personally aware of defects within her application of her role, and had ample time to notify her employer, CSU, and to cure these defects. As such, this Court should adopt the language of many previous cases in opting for substantial, rather than strict, compliance with the GCA: "So long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits." *Minsky v. Los Angeles*, 11 Cal. 3d 113, 123, 113 Cal. Rptr. 102, 110, 520 P.2d 726, 734 (1974). Plaintiffs contend that substantial notice of defects and opportunity to cure were afforded Defendants, thus satisfying the notice requirement.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendants' Motion to Dismiss Plaintiff's TAC in its entirety. Further, Plaintiff respectfully requests that, if the Court is inclined to grant Defendants' Motion as it related to Plaintiff's Title IX claim, that the Court refrain from doing so at this time, such that Plaintiff may engage in discovery, given the difficulties acknowledged in the *Doe* case cited herein. Given the benefit of such reasonably calculated discovery, if such facts are elicited – as Plaintiff believes they will be – to support Plaintiff's claims, Plaintiff will then seek leave to appropriately amend Plaintiff's complaint to incorporate that new information. If, on the other hand, Plaintiff's targeted discovery yields no fruit, Defendants are free to file a similar Motion to Dismiss.

///

///

///

///

Dated: April 30, 2024

                         Respectfully Submitted,

                         **LENTO LAW GROUP, P.C.**
                         **SIAS LAW, INC.**

By: _____
       Joseph Cannizzo Jr., Esquire
       Jason O. Sias
       Attorneys for Plaintiffs,
       ERIC JAMES BAGNALL and
       ESTATE OF CAMREN MCKAY BAGNALL